# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CHARLES LUBIN d/b/a LUBIN ADVISORY GROUP, LLC, ) ) ) Plaintiff, ) ) v. ) ) DCT SYSTEMS GROUP, LLC, ) ) Defendant. ) | CIVIL ACTION NO. 1:13-CV-02206-ODE |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE EXISTS NO GENUINE ISSUE TO BE TRIED

COMES NOW Plaintiff and, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56, hereby sets forth his statement of material facts as to which there exists no genuine issue to be tried and which evidence his entitlement to summary judgment on the counterclaims that have been brought against him by Defendant, DCT Systems Group, LLC.

1.

DCT is an IT consulting firm that provides various hardware and software and auditing services designed to increase IT and financial effectiveness in the

marketplace. (Pl. Ex. 9)[1] Chittranjan "Chuck" Thakkar is DCT's president and manager. (Deposition of Chittranjan Thakkar,[2] Vol. I, (hereinafter "Thakkar I"), 6:22–7:2)

2.

DCT's primary office is located in Norcross, Georgia. (Thakkar I Dep. 6:12–15)

3.

Lubin resides in Woodbridge, Connecticut. (Deposition of Charles Lubin, 4:13–14)

4.

Lubin attended Emory University for his undergraduate studies and then New York University for graduate school. (Lubin Dep. 16:3–8)

---

[1] Plaintiff has retained the exhibit numbers from the depositions that have been taken in this case. Plaintiff's Exhibits 1-54 are deposition exhibits. Plaintiff's Exhibit 55 and continuing have not yet been used as an exhibit. Plaintiff is filing only those exhibits upon which Plaintiff relies. Throughout, Plaintiff's Exhibit is abbreviated as "Pl. Ex." The numbering of exhibits used by Defendant in Lubin's deposition are retained and abbreviated as "Def. Ex." If documents have been Bates numbered, citation is to the Bates number. Documents with numbers starting with "P" were produced by Plaintiff and numbers starting with DCT were produced by Defendant.

[2] Thakkar's deposition was taken on two days: February 27 and April 14, 2014. Deposition citations are abbreviated as follows: Name of deponent Page:Line.

5.

Lubin has worked as a consultant, mostly in-house, for accounting and finance firms since approximately 1982. (Lubin Dep. 16:7–14, 17:24–18:20)

6.

Lubin created Lubin Advisory Group, LLC (hereinafter "LAG") in or around 2009. (Lubin Dep. 20:14–15)

7.

Lubin, through LAG, occasionally provides financial consulting services as an independent contractor to financial institutions and corporations. (Lubin Dep. 20:17–22:7)

8.

Lubin worked for DCT from August 20, 2012, until early December, 2012, providing consulting services for a DCT contract with Lowe's Companies, Inc. (hereinafter "Lowe's"). (Lubin Dep. 8:5–14, 14:9–15:17)

9.

To work on the Lowe's project for DCT, Lubin typically flew into North Carolina on a weekly basis and worked out of Lowe's corporate headquarters in Mooresville, North Carolina. (Lubin Dep. 19:16–20:6)

10.

Lubin worked exclusively on what was termed the Track 3 project for Lowe's. (Lubin Dep. 34:1–35:4)

11.

The goals of the Track 3 Lowe's project were to review the finance functions the Lowe's information technology ("IT") department was performing; how the department was performing these finance functions; what systems were being used; what problems were arising; and to make recommendations for areas of improvement. (Lubin Dep. 34:1–35:4)

12.

Lubin's direct supervisor for the Track 3 Lowe's project was Alan Berch. (Lubin Dep. 22:18–23:8)

13.

Lubin began invoicing DCT for his services in or around September, 2012. (Lubin Dep. 52:3–16)

14.

Beginning on October 1, 2012, Lubin invoiced DCT approximately every two weeks, up until December 4, 2012. (Lubin Dep. 80:4–11; Def. Ex. 2)

15.

The invoices request payment at a rate of $1,200.00 per day worked. (Def. Ex. 2; Lubin 79:24-80:24)

16.

Lubin invoiced DCT for a total of $110,308.46, inclusive of professional services and expenses. (Def. Ex. 2)

17.

Lowe's approved completion of Track 3 on or around December 12, 2012. (Pl. Ex. 2; Lubin Dep. 178:13-16)

18.

Lowe's paid DCT for all the work DCT performed on the 2012 contract, including Track 3. (Thakkar I Dep. 109:17–110:3)

19.

For unknown reasons, Lowe's decided not to go forward with the second phase of the Track 3 contract (the implementation phase) but continued its relationship with DCT on the other parts of the project for another year. (Thakkar I Dep. 29:15–30:17; Thakkar II Dep. 231:11–20)

20.

Lowe's maintained a continuous relationship with DCT until approximately early February, 2014, at which time Lowe's ended the DCT contract. (Thakkar I Dep. 31:18–24)

21.

On December 24, 2012, DCT proposed paying Lubin a total of $83,865.06 for his work on the Lowe's Track 3 project. (Pl. Ex. 3, p. DCT 27-28)

22.

Lubin contacted Mike Riley, Lowe's Vice President of Procurement, via email on January 3, 2013, to address DCT's non-payment of Lubin's invoices and stated:

> I am one of the DCT Consultants on the Strategic Roadmap project. I was in the Financial Management Track (Track 3) under Alan Berch working with Janie Brown and Christina Tomasco.
>
> Would you have a few minutes to talk on the phone this afternoon.

(Pl. Ex. 14, pp. P47-49)

23.

Also on January 3, 2013, Lubin spoke with Riley regarding the issue between Lubin and DCT and told Riley that he had not been paid. (Lubin 176:7-14)

24.

Riley indicated in a follow-up email that it was Lowe's position that the issue could be resolved without Lowe's involvement and referred Lubin to two other contacts at Lowe's should he require additional assistance. (Pl. Ex. 14, p. P47)

25.

Via email dated January 9, 2013, Lubin countered DCT's payment offer and requested a total of $109,378.46 in professional services and expenses. (Def. Ex. 11, pp. 2-3)

26.

DCT responded the following day, offering Lubin a total of $91,708.46, because Alyssa Williams had "accidentally" omitted the remaining days from Plaintiff's last invoice. (Def. Ex. 11, pp. 1-3)

27.

Plaintiff had pointed out the omission of this invoice in his email on that same day. (Def. Ex. 8, p. 3)

28.

After more than a month of negotiations without success, Lubin withdrew his offer to compromise the amounts he asserted were due by email dated January 14, 2013, and indicated that he would "engage Lowe's in the conversation." (Def. Ex. 11, p. 1)

29.

On January 14, 2013, Lubin followed up with Mohan Komanduri (one of the Lowe's contacts provided by Riley) and stated, "I have made every effort to resolve the matter directly with DCT but have not been able to make any progress." (Def. Ex. 13, p. 1)

30.

Lubin stated in his deposition that his statement in the email to Mohan Komanduri that progress was not being made with respect to the negotiations between himself and DCT was his opinion regarding the events, testifying that "in [his] eye," DCT increasing its offer by $8,000 was not progress. (Lubin Dep. 189:11-17, 188:8–191:13)

31.

DCT's attorney sent Lubin a "cease and desist" email on January 15, 2013, instructing Lubin to "discontinue any disparaging comments regarding" DCT. (Def. Ex. 12)

32.

DCT's president, Thakkar, is unable to specify how Lubin's statements interfered with the Lowe's contract, or if even Lubin was the cause of Lowe's not renewing part of the 2013 contract. (Thakkar Dep. 123:4–124:5; Thakkar II Dep. 232:8–233:14)

33.

DCT has not paid Lubin for the services provided or his out of pocket expenses incurred. (Lubin Dep. 28:2–4)

34.

In its counterclaim, DCT contends that Lubin's work was deficient and that DCT personnel was forced to perform "at least fifty and up to one hundred hours" of work to repair the deficient work. (Pl. Ex. 10, p. 8)

35.

DCT claims that DCT's President Thakkar performed the work to repair Lubin's alleged deficient work. (Thakkar I Dep. 119:1–12; Thakkar II Dep. 261:21-262:20, 264:3-264:22)

36.

Thakkar cannot describe with any particularity what exactly it was that Lubin did incorrectly or the work that he claims he himself actually performed to repair the alleged deficient work. (Thakkar I Dep. 119:1–12; Thakkar II 261:21-262:20, 264:3-264:22)

37.

DCT is also unable to detail with any specificity any damages it suffered as a result of Lubin's alleged negligence. (Pl. Ex. 10, p. 37, No. 4; Pl. Ex. 55, pp. 4–5; Pl. Ex. 56, p. 8)

38.

DCT's President Thakkar does not even know if DCT was damaged by any alleged negligence on the part of Lubin. (Thakkar Dep. 120:25–121:2, 121:11–122:4)

39.

DCT contends Lubin made false statements to certain Lowe's personnel (Christina Tomasco, Mike Riley, and Mohan Komanduri) in late 2012 and early 2013 indicating that DCT refused to pay Lubin. (Pl. Ex. 33, p. 5; Thakkar II Dep. 234:23–235:6)

40.

DCT contends that Lubin's statements interfered with DCT's contracts with Lowe's. (Pl. Ex. 33, p. 6)

41.

DCT's President does not know if Lubin was the cause of Lowe's not renewing the contract in 2013, only that Lubin's statements "potentially had an impact." (Thakkar I Dep. 123:4–124:5, Thakkar II Dep. 232:8–233:14)

42.

The only damages asserted by DCT as a result of Lubin's alleged interference with its contract is that President Thakkar was forced to spend time and effort "repairing the relationship with the customer," some fifty to one hundred hours. (Pl. Ex. 37, p. 9; Pl. Ex. 55, pp. 4–5; Pl. Ex. 56, p. 8; Thakkar II Dep. 262:4-264:22)

43.

DCT President Thakkar does not have a list of the hours he allegedly spent repairing the relationship with Lowe's. (Thakkar II Dep. 264:3-264:22)

44.

The fifty to one hundred hours Thakkar says he spent is just a "guesstimate." (Thakkar II Dep. 264:3-264:22)

45.

DCT's President Thakkar is unable to say what the issues were he was addressing with Lowe's, the time he spent or what he did to "repair the relationship." (Pl. Ex. 37, p. 9; Pl. Ex. 55, pp. 4–5; Pl. Ex. 56, p. 8; Thakkar II Dep. 262:4-264:22)

46.

In early February, 2014, Lowe's terminated DCT's remaining contract, but did not give a reason. (Thakkar I Dep. 30:9-17, 31:21-32:3)

47.

DCT has claimed that this contract termination in 2014 was caused by Lubin but has provided no evidence to support this claim. (Thakkar II Dep. 229:11-20, 231:11-25, 233:9-14)

Respectfully submitted this 3rd day of September, 2014.

                                                 s/Janet E. Hill
                                                 Janet E. Hill, Esq.
                                                 Georgia Bar No. 354230
                                                 Attorney for Plaintiff
                                                 HILL & ASSOCIATES, P.C.
                                                 1160 S. Milledge Ave, Suite 140
                                                 Athens, Georgia 30605
                                                 Telephone: (706) 353-7272
                                                 Fax: (706) 549-8446
                                                 E-mail: janet@hillworklaw.com

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| CHARLES LUBIN d/b/a LUBIN ADVISORY GROUP, LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. ) 1:13-CV-02206-ODE |
| DCT SYSTEMS GROUP, LLC, | ) ) |
| Defendant. | ) |

## RULE 7.1D CERTIFICATION
## AND CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was prepared in Times New Roman, 14 point font, and is in compliance with NDGa Local Rules 5.1B and 5.1C.

I hereby certify that on this 3rd day of September, 2014, I electronically filed this **Plaintiff's Statement of Material Facts as to Which There Exists No Genuine Issue to Be Tried** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

W. Hennen Ehrenclou
Hennen@EhrenclouGlover.com

          s/Janet E. Hill

Janet E. Hill, Esq.
Georgia Bar No. 354230
Attorney for Plaintiff
HILL & ASSOCIATES, P.C.
1160 S. Milledge Ave, Suite 140
Athens, Georgia 30605
Telephone: (706) 353-7272
Fax: (706) 549-8446
Email: janet@hillworklaw.com